**Shawn SMITH, Plaintiff,**

**v.**

**J.I. CASE CORPORATION d/b/a Case Corporation, Defendant.**

**Civ. A. No. 94–6954.**

United States District Court,
E.D. Pennsylvania.

Aug. 2, 1995.

**230**

Thomas J. Mettee, Philadelphia, PA, for plaintiff.

Joseph K. Hetrick, Dechert, Price & Rhoads, Philadelphia, PA, for defendant.

## MEMORANDUM

GAWTHROP, District Judge.

This products liability case, over which this court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332, is before me on Defendant, Case Corporation's Motion to Compel Discovery Pertaining to Plaintiff's Remaining Mental Anguish Claims. Case seeks to compel the plaintiff to submit to a six-hour psychiatric examination pursuant to Fed.R.Civ.Proc. 35, and to produce his psychological records from both before and after he was injured by a backhoe manufactured by defendant Case Corporation. Upon the following reasoning, I shall deny Case's motion.

Plaintiff withdrew a separate tort claim for the emotional distress which he suffered as a result of his accident. Case contends, however, that his mental condition is still at issue in this litigation. It argues because he claims to have suffered compensable damages as a result of "embarrassment" and "myofascial pain syndrome," his mental condition is still at issue. Case also claims that the plaintiff's physical injuries have "psychological component[s]" which place his mental condition in controversy.

Under Fed.R.Civ.Proc. 35, the court may order a party to submit to a mental examination only if that party's mental condition is "in controversy," and the movant has shown "good cause" for the person to be examined. In *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), the Supreme Court noted that the "in controversy" and "good cause" requirements

> "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which an examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination."

*Id.* at 118, 85 S.Ct. at 242–43.

Two recently published cases conducted a thorough review of cases in which psychiatric examinations under Fed.R.Civ.Proc. 35 were at issue, and they concluded that although no "hard and fast rule" has been articulated, courts seem to allow them when 1) there is a separate tort claim for emotional distress, 2) the plaintiff alleges that he suffers from a severe ongoing mental injury or a psychiatric disorder, 3) the plaintiff will offer expert testimony to support the claim, or 4) the plaintiff concedes his mental condition is in controversy. *See Turner v. Imperial Stores,* 161 F.R.D. 89, 95–96 (S.D.Cal.1995); *see also Bridges v. Eastman Kodak Co.,* 850 F.Supp. 216 (S.D.N.Y.1994).

■ Thus, a claim of emotional distress, without more, is insufficient to put the plaintiff's mental condition "in controversy." *Turner,* 161 F.R.D. at 97; *Cody v. Marriott Corp.,* 103 F.R.D. 421, 422 (D.Mass.1984). The "in controversy" and "good cause" requirements of Fed.R.Civ.Proc. 35 " 'make it very apparent that sweeping examinations of

a party who has not affirmatively put into issue his own mental ... condition are not to be ordered merely because the person' has made a claim of emotional distress." *Cody,* 103 F.R.D. at 422, *quoting in part Schlagenhauf,* 379 U.S. at 121–22, 85 S.Ct. at 244.

■ Plaintiff does not even allege to have suffered emotional distress in the Amended Complaint. His claim based upon mental damages is limited to "embarrassment,"[1] and it is not pled as a separate tort claim. There is no evidence that he will employ an expert to testify about this embarrassment. There is also no allegation that the "embarrassment" is particularly severe, or that it rises to the level of a psychiatric disorder. This claim of embarrassment, without more, does not place plaintiff's mental condition "in controversy" within the meaning of Fed. R.Civ.Proc. 35, and it is not "good cause" for requiring plaintiff to submit to six hour psychiatric examination. *See Turner,* 161 F.R.D. at 95.

■ Case's argument that plaintiff's claim for "myofascial pain syndrome" puts his mental condition in controversy is puzzling. "Myofascial syndrome," also known as "myofascial pain syndrome," is defined as "irritation of the muscles and fasciae (membranes) of the back and neck causing chronic pain (without evidence of nerve or muscle disease)." *Schmidt's Attorneys' Dictionary of Medicine,* (1978) M–323. The syndrome is not mentioned in the Diagnostic and Statistical Manual ("DSM–IV") as a recognized psychiatric disorder, and Case has provided no evidence to prove that it is a mental affliction.

■ Case also argues that plaintiff's submission of psychological services bills as compensable damages is "good cause" for a psychiatric examination. Those bills appear to be, however, for a "behavioral pain management program," biofeedback, ordered by a physician who treats plaintiff's physical injuries, which allegedly cause him chronic pain. Although a psychologist provides this treatment, the treatment is for plaintiff's physical injury, not for a psychiatric disorder. Defendants may examine those records to insure that the psychological treatment is only for pain management, but the mere fact that a psychologist is treating plaintiff's physical injuries is not evidence that plaintiff's mental condition is in controversy.

■ In addition to arguing that plaintiff's remaining mental anguish claim is good cause for a psychiatric examination, Case argues that certain "psychological component[s]" to plaintiff's physical complaints constitute good cause as well. These arguments are without merit. First, Case notes that drugs which plaintiff takes for depression might be causing some of the physical symptoms for which he seeks compensation. This is not good cause for a psychiatric examination. In order to support its argument that plaintiff's non-injury related medication is causing his symptoms, defendant need only call an expert to testify that this medication does cause the symptom of which plaintiff complains. It is difficult to see how a psychiatric examination would provide useful evidence on this point.

■ Defendant also claims that plaintiff's admission that he used marijuana on a daily basis, presumably to alleviate the pain from his injuries, is good cause for a psychiatric examination because marijuana use may be relevant to some of his symptoms and to his physical diagnosis. Again, it is difficult to see why a psychiatric examination would assist the defendant in proving these assertions. A physical examination, not a psychiatric examination, would develop how closely related plaintiff's physical injuries and symptoms are related to conditions caused by marijuana use, and then defendant could hire an expert to testify that marijuana use might cause the plaintiff's symptoms or one of the underlying conditions from which he suffers.

■ For the reasons discussed above, the court also determines that defendant is not entitled to plaintiff's psychological records, with the exception of records kept by the

1. Case also claims that the boilerplate allegation that plaintiff suffers from "other ills" as a result of his injury puts plaintiff's mental condition "in controversy." Plaintiff agreed not to submit claims based upon any psychiatric disorders. Further, this general allegation is insufficient evidence that plaintiff's mental condition is in controversy.

behavioral psychologists whose bills the plaintiff claims are compensable damages in this case. Any psychiatric disorders from which plaintiff has suffered are not relevant to this case. Further, so long as plaintiff does not claim that psychological treatment for the "embarrassment" which he suffers as a result of his injury is compensable, I shall not require him to provide defendant with records of therapy sessions in which he discussed this issue. Even if certain of these records are not privileged, which defendant argues, they concern very private matters which I shall not order plaintiff to divulge in the absence of evidence that they will lead to the discovery of admissible evidence.

The practice seems to be more and more in vogue of late for defendants to seek to partake of the *in terrorem* tactic of visiting upon a plaintiff a particularly intrusive incursion: examination by a psychiatrist, and other psychological delvings.

Discovery has its virtues; trial by ambush has gone the way of copies by carbon paper. Procedural foreplay has become a cottage industry. Litigants now largely spend their time, not in courtroom battles, but in pretrial skirmishes—which is probably a good thing, as we hardly have enough courtrooms to contain today's barristerial throngs.

But it has been observed in some quarters that discovery has on occasion even been used as a delaying tactic, a procedural roadblock to trial. So also, some have suggested that it has been used as a way to harass and intimidate plaintiffs into dropping their lawsuits, rather than subjecting themselves to the gauntlet of pretrial probings. This squarely falls within that category and is not to be countenanced.

In so stating, I by no means suggest—even though it is beyond the factual ambit before me—that psychiatric and psychological exams are never called for. The rules expressly call for them, and properly so. Many is the situation when they are a necessary and proper tool for fingering the mental malingerer, exposing the hyper-emotional charlatan. I only suggest that in cases such as this one—your basic garden-variety tort quest for damages, to include pain and suffering—psy-

chiatric examination should be the exception, not the rule.

An order follows.

## ORDER

AND NOW, this 2nd day of August, 1995, Case Corporation's Motion to Compel Discovery Relating to Plaintiff's Remaining Mental Anguish Claims is DENIED.