## Commonwealth v. Doe

C.P. of Lehigh County, no. 1998/261-M.

*Steven M. Luksa, assistant district attorney,* for Commonwealth.
*Kathleen E. Panek, assistant public defender,* for defendant.

BLACK, *J.,* April 16, 1998—The District Attorney of Lehigh County has moved for the entry of a court order, pursuant to 35 P.S. §7608, directing Sacred Heart Hospital to release the results of Human Immunodeficiency Virus blood tests of defendant, John Doe, both

to the district attorney and to Jane Doe, whom defendant allegedly bit on the hand.[1] The district attorney seeks information regarding the defendant's HIV status because if defendant bit Jane Doe while knowingly infected with the virus, the district attorney intends to add more serious charges to the felony retail theft and assault charges already filed against defendant. Jane Doe seeks this information so that she will know if she has been exposed to the virus; if so, she can then commence appropriate drug therapy. Defendant resists providing this information to the district attorney or to Jane Doe.

The Confidentiality of HIV-Related Information Act, 35 P.S. §7601 et seq., prohibits the disclosure of HIV-related information, except in certain limited circumstances. The purpose of the Act is "to promote confidential testing on an informed and voluntary basis in order to encourage those most in need to obtain testing and appropriate counseling." 35 P.S. §7603(d). The Act allows for disclosure on court order after an in camera hearing where "[t]he person seeking the information has demonstrated a compelling need for that information which cannot be accommodated by other means." 35 P.S. §7608(a)(1). In assessing claims of compelling need, "the court shall weigh the need for disclosure against the privacy interest of the individual and the public interests which may be harmed by disclosure." 35 P.S. §7608(c).

At an in camera hearing on the district attorney's motion, the following facts were established: Jane Doe, a security officer at a local store, observed defendant shoplifting some clothing items. She confronted him

---

1. John Doe is a pseudonym for defendant, and Jane Doe a pseudonym for the victim.

in the parking lot and asked that he return to the store. She put her hand on his shoulder to steer him back to the store, at which point he grabbed her by the hair with both hands and began to push her away. A scuffle ensued, in which another employee of the store and an employee of a nearby store came to the assistance of Jane Doe. Defendant was subdued and forced to return to the store, where he was taken into custody by the local police, who had by this time arrived on the scene.

In the course of the parking lot scuffle, defendant bit Jane Doe on the hand with such force that the skin of her hand was broken in several places. Her hand was bleeding as a result. Defendant then stated several times to Jane Doe and to others in the parking lot that he had AIDS.[2] After he had been taken inside the store, defendant repeated this statement several times in the presence of the police officers and other store employees.

At the suggestion of the police, defendant accompanied them to Sacred Heart Hospital, where with his consent a blood sample was drawn from him for HIV testing. Defendant signed a consent form authorizing the hospital to furnish to the police department all information regarding his case history and treatment, including copies of the hospital medical records. However, after his blood sample had been drawn, but before the test results were conveyed, defendant revoked his consent to disclosure.[3]

---

2. Acquired Immune Deficiency Syndrome.

3. 35 P.S. §7607(e)(8) provides that such a consent "is subject to revocation at any time except to the extent that the person who is to make the disclosure has already acted in reliance on it."

According to expert medical testimony at the hearing, HIV is a slow-developing virus. Sometimes it takes eight to 10 years after the initial exposure for the virus to develop into full-blown AIDS. The patient may be symptom-free during this period. However, once symptoms begin to develop, the disease is invariably fatal. The virus may be transmitted from mother to newborn child, by sexual relations, or by the sharing of blood or body fluids. Where a person with the virus bites another person so as to cause a break in the skin, there is a moderate to high risk (depending on the dental hygiene of the biter) that the virus will be transmitted from the saliva of the biter into the bloodstream of the victim. There have been several documented cases of this occurring.

Because the virus is slow to develop, it is not possible to determine immediately after the exposure whether a person has been infected. It is possible for a person to test negative for the virus immediately after the exposure, and then to have a positive test at a later date. It is important to know as soon as possible whether a person has been exposed, because drug therapy is highly recommended where there has been a significant exposure, even if the victim does not test positively for the virus. Drug therapy has been very successful in reducing the effects of the virus, and the sooner the therapy is begun, the more effective it is.

Although Jane Doe has tested negative for the virus, she remains highly concerned over the possibility of developing the disease if in fact defendant was a carrier of the virus. Therefore, it is understandably very important to her to know whether defendant's claim of having AIDS is true or whether he was simply seeking

to intimidate her. Until this information is provided, she is undergoing extreme emotional distress. She is frightened about her health; her outlook towards her job has been adversely affected; and the potential of her carrying the disease has had a dramatic effect on her relationships with her boyfriend and her family members.

There can be no doubt that Jane Doe demonstrated a compelling need for information about defendant's HIV status as soon as possible. Accordingly, we entered an appropriate order promptly after the hearing requiring that defendant's HIV test results be released to her and to any physicians or other health care providers designated by her for the sole purpose of evaluating and treating her. This 21-year-old young lady was entitled to know whether she had been exposed to this dreadful virus. Defendant, whose unlawful actions created the potential for exposure and who maliciously taunted her with the claim that he had AIDS, has no significant privacy interest here. Nor is there any public interest that would be harmed by the disclosure of test results in these circumstances. The potential saving of human life must outweigh other considerations. See *Application of Milton S. Hershey Medical Center of Pennsylvania State University,* 407 Pa. Super. 565, 595 A.2d 1290 (1991), *appeal granted,* 531 Pa. 640, 611 A.2d 712 (1992), *affirmed,* 535 Pa. 9, 634 A.2d 159 (1992), holding that the two hospitals could disclose the identity of an HIV-positive surgeon to certain of his colleagues and could also notify certain patients that an unnamed resident physician who had participated in their care was HIV-positive.

The district attorney's need for this information is less compelling than Jane Doe's need. Therefore, at the conclusion of the in camera hearing, we took the

district attorney's request under advisement. We now grant that request and direct Sacred Heart Hospital to provide the district attorney with the test results, subject to the limitations set forth in our accompanying order.

We have reached this conclusion by weighing the district attorney's need for the information against defendant's privacy interest and any public interests that might be harmed by the disclosure, as we are required to do under 35 P.S. §7608(c). We have considered the fact that the district attorney is responsible under the law for prosecuting those persons who have committed crimes in this county. If defendant does in fact have the AIDS virus, the gravity of the offense that he has committed against Jane Doe changes from simple assault, a misdemeanor, to aggravated assault, a felony, or perhaps even to attempted criminal homicide. The district attorney could conceivably assert the more serious offenses based solely on defendant's statements that he has AIDS. However, without the test results, the district attorney would be at a significant disadvantage in prosecuting the case. Defendant could at any time change his position and claim that his statements were erroneous.

We also believe that defendant has waived any rights of privacy under the Act by his public declarations. Defendant cannot seriously claim that his HIV status, if it exists, is confidential because he himself broadcast it to many people at the time of the parking lot scuffle and later inside the store. The waiver rationale for disclosure was adopted by a New York court in *Application of Gribetz,* 605 N.Y.S.2d 834 (Rockland Co. Ct. 1994), where a female patient at a mental health center bit a worker who was trying to restrain her and then an-

nounced that she had AIDS. The court held that disclosure to the prosecutor was warranted because: "under the circumstances of this case where the defendant allegedly announced publicly on more than one occasion that she was H.I.V. positive, that she effectively waived her own privacy interest in the test results." *Id.* at 836.

In view of defendant's voluntary statements to Jane Doe and others, we see no public interest that would be harmed by the disclosure. It is difficult to envision that anyone who has publicly announced his contraction of AIDS would be deterred from having an HIV blood test for fear that the results might be disclosed.

It should be noted that a "compelling need" under section 7608 can be a need for litigation purposes as well as a medical need. In *Agosto v. Trusswal Systems Corp.,* 142 F.R.D. 118 (E.D. Pa. 1992), the Federal District Court for the Eastern District of Pennsylvania ordered disclosure of confidential HIV-related information regarding the plaintiff in a products liability suit. The plaintiff allegedly had tested HIV-positive, and was seeking damages for future pain and suffering and future loss of earning capacity, so that his life expectancy was very much an issue. The court held that the interest of the defendant in preparing an adequate defense to the case was a "compelling need" under section 7608 that justified release of the information to the defendant.

In the circumstances of this case, in weighing the district attorney's need for the information against defendant's waived privacy interest and any public interest in non-disclosure, the balance tilts heavily in favor of disclosure to the district attorney. Where a person has

openly stated that he has AIDS, there is no legitimate purpose to be served in refusing disclosure of his HIV test results to persons with a genuine need for this information. Defendant's alleged HIV status is no longer a confidential matter, by his own declarations.

As for the form of our order, the Act requires that a disclosure order impose appropriate safeguards against later unauthorized disclosure by recipients of the information. In the Jane Doe order previously entered, we referred to her and defendant by pseudonyms to preserve their anonymity. We informed Sacred Heart Hospital of their true identities in a confidential communication not part of the regular court file, as required by the Act, so that the hospital could comply with the order. We prohibited any further disclosure.

This procedure is not appropriate for the disclosure order to the district attorney. If the test results are positive, the district attorney must be free to charge the defendant by name with the appropriate crimes and to offer the test results into evidence at a public trial. Therefore, although we have continued to refer to the parties by pseudonyms in this order, we have not restricted the district attorney from disclosing the information to the extent required for the prosecution of this case. If in fact the defendant deliberately bit Jane Doe knowing that he was HIV-positive, he has committed a most heinous crime, and the public has the right to know of his act. Moreover, defendant's privacy interests in this information vanished when he himself made his HIV status public.

## ORDER

Now, April 16, 1998, upon consideration of the motion of James Martin, Esq., District Attorney of Lehigh

County, for release of HIV blood test results of John Doe, it appearing after hearing that there is a compelling need for disclosure of this information to said district attorney, it is ordered as follows:

(1) The results of the HIV blood tests performed on John Doe at Sacred Heart Hospital in February 1998, shall be released to James Martin, Esq., District Attorney of Lehigh County.

(2) This information is to be used solely for the purpose of prosecuting defendant, John Doe, on charges arising from an incident on or about February 4, 1998, in which he allegedly bit Jane Doe.

(3) The district attorney shall limit access to this information to those attorneys and support staff directly involved in the prosecution of the case against John Doe, except as it may be necessary to disclose this information in court in the prosecution of the case.

(4) All persons who receive defendant's HIV test results pursuant to this order are prohibited from further disclosure of this information, except as may be required in court proceedings on the charges against defendant.